Troy P. Foster, #017229
Megan Weides, #033552
**The Foster Group, PLLC**
902 W. McDowell Road
Phoenix, Arizona 85007
Tel: 602-461-7990
tfoster@thefosterlaw.com
mweides@thefosterlaw.com
*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kristin Godbehere, an individual, | Case No.: 2:22-cv-01994-JJT |
| Plaintiff, | **FIRST AMENDED COMPLAINT** |
| vs. | **(Jury Trial Demanded)** |
| Maricopa County, | |
| Defendant. | |

For her Complaint against the Maricopa County, Ms. Kristin Godbehere ("Plaintiff") alleges as follows:

**Introduction**

For an agency that touts itself as being there to serve and protect, it completely failed Ms. Kristin Godbehere. Ms. Godbehere dedicated nearly twenty-one (21) years of her life working there and serving the community as an Emergency Dispatcher and Supervisor. She excelled in her job and truly enjoyed her work. All of that changed when Maricopa County Sheriff's Office ("MCSO") officers botched a response to a homicide call that Ms. Godbehere was the dispatcher for, and she began having difficulties performing her job as she had before.

Defendant planned on discharging Ms. Godbehere from her employment after she requested an accommodation to modify her work schedule in an effort to manage distress caused by the traumatic events of the botched homicide response. MCSO also tried to force Ms. Godbehere into participating in the job reassignment program stating she had permanent duty restrictions, which she did not. She was told that she would need to accept any open position upon participation in the job reassignment program, which could have resulted in a reduction in pay and unfavorable schedule. The MCSO also deprived Ms. Godbehere of wages by not allowing her to work a modified schedule of 40 hours per week, 10 hours per day. They instead opted to make her continue working her previously modified work schedule of 3 days per week, 8 hours per day. Ms. Godbehere had no choice but to resign from MCSO under these circumstances.

These are precisely the circumstances the ADA was contemplated to assist and protect employees like Ms. Godbehere. Allowing her to modify her schedule and keeping her job available, not forcing her to lose her health insurance and other benefits – so that Ms. Godbehere could focus on treating her disabilities. Instead, Defendant ignored these laws, and deprived Ms. Godbehere of these statutory protections.

## **Background Allegations and Jurisdiction**

1. At all times relevant to this Complaint, Ms. Godbehere resided in the State of Arizona, Maricopa County and is a citizen of the State of Arizona.

2. Maricopa County is a jural entity in the State of Arizona.

3. At all times relevant to this Complaint, Ms. Godbehere worked for Maricopa County in its Sheriff's Office in Phoenix, Arizona.

4. At all times relevant to this Complaint, MCSO was a department of Maricopa County and was law enforcement agency in Maricopa County.

5. Maricopa County hired Ms. Godbehere as an Emergency Dispatch for MCSO on or about September 28, 1999.

6. At the time of her constructive discharge in June of 2021, Ms. Godbehere was an Emergency Dispatch Supervisor.

7. Maricopa County employs 50 or more employees.

8. Maricopa County is not exempt from the Americans with Disabilities Act of 1990, or as amended ("ADA" or "ADAAA").

9. Maricopa County is subject to the Family Medical Leave Act ("FMLA").

10. Maricopa County is an employer as defined in the ADA and the FMLA.

11. Ms. Godbehere was an employee as defined in the ADA and the FMLA.

12. Ms. Godbehere filed a Charge of Discrimination against Maricopa County (MCSO) with the EEOC on or about July 7, 2021. *See* Charge No. 540-2021-03414, attached as Exhibit 1.

13. On October 13, 2022, the U.S. Department of Justice issued Ms. Godbehere a Notice of Right to Sue, attached as Exhibit 2.

14. Ms. Godbehere's Complaint has been filed within 90 days from receipt of authorization to bring a civil action.

15. Ms. Godbehere has exhausted her administrative remedies.

16. Jurisdiction and venue are appropriate in this Court.

## One Call Changed It All

17. On August 9, 2018, Ms. Godbehere answered a 911 call reporting three persons who had been shot.

18. Ms. Godbehere was forced to listen to this person die slowly for approximately an hour as the officers responding failed to respond to the scene of the injured parties to render medical aid and/or clear the crime scene for medic personnel.

19. After this phone call, Ms. Godbehere was diagnosed with Post-Traumatic Stress Disorder ("PTSD") and anxiety.

20. Because of the PTSD and anxiety, Ms. Godbehere experienced difficulties with concentration, memory, intrusive thoughts and objectivity.

21. Additionally, these medical conditions cause increased heart rate, hypertension, nausea, migraines, muscle pain, insomnia and fatigue.

22. Ms. Godbehere did not take any time off work immediately after this fateful call, other than an afternoon after meeting with Sheriff Penzone when she went home at his instruction or attend doctor's appointments due to the resulting anxiety.

23. During her meeting with Sheriff Penzone, Ms. Godbehere was visibly upset over how the officers handled the situation. During the same meeting immediate supervisor, James Stilwell, also said he did not handle the situation correctly when Ms. Godbehere expressed her distress over the event.

24. Ms. Godbehere's health did not improve over time, and it began impacting her relationships with co-workers and family.

25. In fact, Ms. Godbehere received three (3) complaints stating she was "being rude" to other employees and had hung up on one caller in 2019 and 2020.

26. Recognizing the decline in her mental health, Ms. Godbehere discussed the situation with her mental health professional and opted to take a leave of absence (short term disability) under the Family Medical Leave Act ("FMLA").

27. Ms. Godbehere's FMLA was submitted and she began her leave of absence on October 5, 2020.

28. Ms. Godbehere returned to work part-time on November 16, 2020, working sixteen (16) hours a week for six (6) weeks.

29. At the expiration of those six (6) weeks, Ms. Godbehere began working twenty-four (24) hours a week, which was set to end on February 7, 2021.

30. However, Ms. Godbehere's physician did not believe she was ready to return to work full-time yet and recommended an extension of her part-time schedule to May 24, 2021.

31. This accommodation request was submitted on February 23, 2021.

### HR Drops the Ball, Backs Plaintiff into a Corner

32. On March 11, 2021, HR notified Ms. Godbehere that she had exhausted her FMLA time back on December 23, 2020.

33. HR explained that Ms. Godbehere would need to submit a reasonable accommodation request in order to get the part-time schedule extension approved.

34. On March 25, 2021, HR then informed Ms. Godbehere that she was no longer qualified for her position because of her "permanent disability" and part-time/modified schedule request, and that MSCO could remove her from her position.

35. HR also told Ms. Godbehere about MCSO's job reassignment program during this conversation and advised if she did not participate she would be released from employment.

36. Despite HR's information, Ms. Godbehere went ahead and submitted the accommodation request paperwork for extending her part-time schedule (or modified schedule) on that same day, March 25, 2021.

37. On March 31, 2021, Ms. Godbehere informed HR that she needed more time to consider the job reassignment program, as she had an application for employment open with another division, and that she could return to work full-time on May 24, 2021, with an altered schedule of 4 days, 10 hours a day, with Wednesday, tentatively, being her day off.

38. Wednesday was Ms. Godbehere's scheduled day for counseling for her PTSD and anxiety.

39. On April 7, 2021, Ms. Godbehere's physician submitted an accommodation request with this altered schedule, which would expire on November 25, 2021.

40. HR agreed to give Ms. Godbehere until April 8, 2021, to decide whether she wanted to participate in MCSO's job reassignment program.

41. Ms. Godbehere contacted HR to ask, if she signed the Job Reassignment papers, could she be reassigned to the job she had applied for in the Legal Liaison division. This question was never answered.

42. Not wanting to give her position up until she had a decision from HR on her altered full-time schedule request or the reassignment to the open Legal Liaison position, Ms. Godbehere did not complete the MCSO's job reassignment program papers.

43. HR responded to Ms. Godbehere's accommodation request by telling her it would be sending clarifying questions to her physician, which took a week to send them.

44. Knowing that her short-term disability assistance was ending, Ms. Godbehere requested, completed and submitted her long-term disability forms which HR did not submit.

45. HR did not inform Arizona State Retirement that Ms. Godbehere was on FMLA, and her retirement account was temporarily suspended.

46. HR filled out Ms. Godbehere's timesheet incorrectly, using all of her leave accruals causing a financial hardship as she had to buy back those accruals.

47. By the time HR sent the clarifying questions and Ms. Godbehere's physician responded, it was mid-May 2021, close to when Ms. Godbehere could begin working an altered full-time schedule.

48. Right around the time that Ms. Godbehere could begin working an altered full-time schedule; HR informed her that it could not accommodate this request claiming it would be an undue hardship on MCSO operations due to staffing.

49. On June 1, 2021, HR sent Ms. Godbehere a letter informing her that because her accommodation request was denied and she did not elect to participate in MCSO's job reassignment program, she was being referred to the Administrative Services Division for "appropriate" administrative action.

**Ostracized and Ousted**

50. Prior to being informed that her altered full-time schedule would probably be denied, not because of undue hardship but because of her pending complaint investigations, Ms. Godbehere's chief told her that everyone knew about her situation and suggested she was going to be terminated. He also suggested she voluntarily demote from her Supervisor position.

51. He told her that her federally protected twelve (12) weeks of time off had expired.

52. He also reminded her that she had four (4) complaints about her being "mean" were still pending due to an ongoing back log in the Professional Standards bureau. Investigations were not being completed in the court mandated 180 days.

53. Ms. Godbehere's chief made comments like this on numerous occasions during their conversation.

54. Additionally, people at work stopped talking to her or would whisper around her, making it clear that they were discussing her.

55. Even Ms. Godbehere's subordinates began questioning her instruction or ignored her.

56. This working environment coupled with short staffing and not knowing what was going to happen to her career exacerbated Ms. Godbehere's PTSD and anxiety to a point that she could barely drag herself into work.

57. In early June of 2021, Ms. Godbehere sent HR an email reporting a hostile work environment and she did not receive a response back.

58. On June 17, 2021, Ms. Godbehere resigned from MCSO after speaking with James Stillwell who had informed her he had paperwork to place her on administrative leave.

## **Allegations Concerning Damages**

59. Ms. Godbehere suffered from a serious medical condition and was eligible for FMLA.

60. Ms. Godbehere was a qualified employee who suffered from disabilities protected under the ADA.

61. Ms. Godbehere requested an accommodation, on various occasions.

62. Defendant did not engage in the interactive process.

63. Instead, the Defendant denied Ms. Godbehere's last accommodation request claiming it was an undue hardship.

64. The schedule modification that Ms. Godbehere requested was one that several of her peers were allowed to exercise.

7

65. Defendant was going to reassign or terminate Ms. Godbehere because of her disabilities and its refusal to engage in the interactive process with her.

66. As a result of Defendant's actions and additional stress, Ms. Godbehere's medical condition worsened.

67. Ms. Godbehere's constructive discharge has also deprived her of a health insurance policy that she was relying on for continued medical treatment.

68. Ms. Godbehere's constructive discharge eliminated her future income and resulted in a loss of wages, paid time off, investment opportunities and retirement benefits.

69. Ms. Godbehere has suffered emotional distress, lost wages, and compensatory damages as a result of Defendant's actions – both before and because of her termination.

## LEGAL CLAIMS

### Count One: FMLA Retaliation

70. Ms. Godbehere reincorporates allegations in paragraphs 1-69, as well as the Introduction, as if fully set forth here.

71. Ms. Godbehere engaged in protected activity when she requested to exercise her FMLA rights and when she took FMLA leave.

72. Defendant retaliated against her by telling her she was no longer qualified for her position within a few weeks of *realizing* she had exhausted her FMLA and that her disability is permanent.

73. Defendant was going to demote or reassign Ms. Godbehere to an Emergency Dispatcher, open position or remove her entirely from MCSO.

74. This decision was a direct result of Ms. Godbehere taking and exhausting her FMLA leave.

75. Defendant's actions were intentional.

76. Defendant's actions were unlawful.

77. Ms. Godbehere is entitled to back pay, future pay, liquidated damages, and her attorney fees and costs.

### Count Two: ADA Discrimination

78. Ms. Godbehere reincorporates allegations in paragraphs 1-78, as well as the Introduction, as if fully set forth here.

79. At all relevant times, Ms. Godbehere had impairments that substantially limited one or more life activities.

80. Ms. Godbehere's PTSD and anxiety, the treatment for it, and the long-term effects of both substantially affected her concentration, memory, thoughts and objectivity Ms. Godbehere's conditions were not singular, nor temporary, and has no beginning and ending points.

81. Ms. Godbehere continues to be treated by physicians for these conditions; and that treatment has no targeted end date as her conditions are manageable but incurable.

82. At all relevant times, Ms. Godbehere was qualified to perform the essential functions of her job with or without a reasonable accommodation.

83. Ms. Godbehere did, in fact, have qualifying disabilities pursuant to the ADA.

84. Defendant knew of Ms. Godbehere's conditions.

85. Ms. Godbehere made requests for accommodations.

86. Defendant unilaterally denied her final accommodation request, but never had a discussion with Ms. Godbehere about it or if other options were available.

87. Defendant failed to engage in the interactive process.

88. Defendant allowed non-disabled, and disabled peers to work the altered full-time schedule that Ms. Godbehere had requested.

89. Ms. Godbehere is entitled to back pay, front pay, compensatory damages, punitive damages, and her reasonable attorneys' fees and costs.

## Count Three: ADA Retaliation

90. Ms. Godbehere reincorporates allegations in paragraphs 1-89, as well as the Introduction, as if fully set forth here.

91. Ms. Godbehere had qualifying disabilities.

92. Ms. Godbehere engaged in protected activity when she requested accommodations for those disabilities.

93. Defendant was going to demote, reassign or terminate Ms. Godbehere for engaging in protected activity.

94. Defendant began treating Ms. Godbehere differently when employees discovered she was about to be terminated, making it difficult to complete her job duties.

95. Because of this treatment and the additional/excessive stress it created, Ms. Godbehere was forced to resign.

96. Ms. Godbehere is entitled to back pay, front pay, compensatory damages, punitive damages, and her reasonable attorneys' fees and costs.

## Conclusion

**THEREFORE**, Ms. Godbehere respectfully requests the following relief:

A. A judgment in her favor against the Defendant;

B. An award of back pay, front pay, and compensatory damages;

C. Injunctive relief against the Company to prohibit future violations of the ADA;

D. Liquidated damages under the FMLA;

E. Pre- and post-judgment interest on award;

F. Punitive damages;

G. Reasonable attorneys' fees and costs; and

H. All other appropriate equitable relief.

**DATED** this 19th day of December, 2022.

**The Foster Group, PLLC**

_Troy P. Foster_____
Troy P. Foster
Megan Weides
902 W. McDowell Road
Phoenix, Arizona 85007
*Counsel for Plaintiff*